Filed 2/21/25  P. v. Couzens CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082843 |
| v. | (Super.Ct.No. FSB1003542) |
| DAVID EDWARD COUZENS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kyle S. Brodie, Judge.  Affirmed as modified with directions.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Kathryn Kirschbaum and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant David Edward Couzens appeals from the trial court's denial of his motion to strike a prior strike (see Pen. Code,[1] § 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*)) at his resentencing hearing under section 1172.75. He also contends the court erred, as the People concede, in staying rather than striking under section 1385 a five-year term for a prior serious or violent felony conviction (§ 667, subd. (a)). Defendant argues this latter error warrants remand for a full resentencing hearing, even if the court did not err in its *Romero* ruling.

As we explain *post*, the trial court did not abuse its discretion in denying defendant's *Romero* motion. As we further explain, we modify the judgment (§ 1260) to strike the section 667, subdivision (a), prior and remand with directions for the court to correct the abstract of judgment accordingly. On remand, the court must also correct the abstract to reflect its oral ruling that it vacated, rather than stayed, defendant's one-year prison prior (§ 667.5, subd. (b)). In sum, we affirm the judgment as modified, with directions to correct the abstract of judgment on remand.

**FACTUAL AND PROCEDURAL HISTORY**

In May 2011, a jury convicted defendant of kidnapping (§ 207, subd. (a); count 2), kidnapping to commit robbery (§ 209, subd. (b)(1); count 3), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1); count 4), and battery with serious bodily injury (§ 243, subd. (d); count 5). The jury also found true a great bodily injury (GBI) enhancement (§ 12022.7, subd. (a)) as to counts 2 through 4. The jury

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

acquitted defendant of the robbery (§ 211) charged in count 1. (*People v. Love et al.* (Sept. 20, 2013, E055359) [nonpub. opn.] (*Love*).) In bifurcated proceedings, the trial court found defendant had a prior strike conviction for attempted robbery (§ 1170.12, subds. (a)-(d)), a prior serious felony conviction (§ 667, subd. (a)), and a prior prison term (§ 667.5, subd. (b)).

The trial court sentenced defendant to 26 years to life in prison, consisting of a minimum indeterminate term of 14 years, consecutive to a 12-year determinate term. The court imposed but stayed under section 654 low terms of six and four years on counts 2 and 5, respectively, and ordered the prior prison term stayed. On appeal, this court reversed the count 2 simple kidnapping conviction as necessarily included in count 3, but otherwise affirmed the judgment. (*Love, supra*, E055359.)

Twelve years later in October 2023, the trial court found defendant eligible for resentencing under section 1172.75 and set a resentencing hearing. The court, which had heard the underlying trial and imposed the original sentence, agreed to "reconsider the entire sentence."

Defendant's primary objective on resentencing was "under *Romero* to strike the strike in its entirety," so that his terms on counts 3 and 4 would not be doubled. He conceded his kidnapping for robbery conviction "would still be a seven-to-life count" and the assault count "would still run consecutive," as would its GBI enhancement.

Defense counsel emphasized defendant's "mitigation packet" reflected "since . . . he was sentenced [that] he has done probably about as remarkable as you can do." He had an exemplary record "in prison [as an] employee, being responsible and getting

things done," while also "not causing any trouble" and "really moving forward in a rehabilitative fashion." Also, almost 58 years old, defendant "listed a number of medical issues," including sleep apnea causing memory loss, "cardiac arteria disease . . . making it very risky—likely that he will suffer a stroke," long-term COVID as well as "quite serious" asthma, a pending hernia surgery, and a diagnosis of general depression disorder, along with taking medication for both anxiety and depression.

The prosecutor acknowledged there were "good things in [defendant's prison] C-file," including "that he has numerous recommendations and good performance evaluations for [his upholstery] vocational work," plus letters of recommendations from social workers at the prison lauding "his good behavior and progress." The prosecutor opposed striking defendant's prior strike because it had been "within a . . . couple of years, [a] few years from the time of [his conviction offenses]" that, like his prior for attempted robbery, "also was a robbery type of situation." The prosecutor described the conviction offenses as "horrific" for the victim.[2]

---

[2] In brief, our prior opinion summarized the underlying facts of the case as follows: After two women "flagged down [the victim]" for "a ride home" and he dropped them off where they indicated, defendant "appeared at the open door of the truck with his right arm bent behind his back," yelling, " 'What the fuck are you doing with my wife and daughter[?]' " Defendant threatened, " 'I am going to fucking kill you. Get out of the car.' " The victim complied, believing defendant had a gun. Defendant "pulled [the victim] towards an abandoned house," "kept repeating that he was going to kill [him]," held him "by the throat and kept shoving him against the wall." When the victim offered to "get money," defendant reached into the victim's pockets and "took all of [his] money and his watch." Codefendant Love then entered the room and defendant became even more aggressive. (*Love*, *supra*, E055359)

Defendant "punched [the victim] on the face with his forearm." When the victim pleaded to "get the men $500 apiece" at an automated teller machine (ATM), the

*[footnote continued on next page]*

Defendant spoke at length at the resentencing hearing. He emphasized his clean disciplinary record and positive work history in prison, including extensive praise from supervisors and managers for his character and work ethic on various projects, including COVID relief efforts. Defendant also stressed his rehabilitative efforts and he cited letters attesting to his progress, including from his mental health doctor, his work supervisor, and multiple correctional officers. He mentioned his medical issues, but detailed in particular the opportunity he was afforded in prison based on his exemplary record to help rehabilitate his son during his son's brief stint there as an inmate. His son was successfully rehabilitated and defendant felt it was his calling to help others do the same.

Defendant also alerted the trial court to severe childhood trauma he suffered at home, which defendant's sister described in a letter as dysfunctional "to the point of child abuse." Defendant's upbringing was saturated with violence, "being beat[en], and being made a drinking partner of [his] stepfather at the age of 12 years old." Incidents like his stepfather holding a gun to his mother's head and threatening to kill her were "almost a daily thing," and included the stepfather getting defendant drunk, fighting him, and

---

defendants seized on the offer, with defendant threatening, " 'You do something stupid, I will kill your whole fucking family.' " Walking the victim back to his truck, defendant directed Love to take the man to an ATM while defendant "waited at the house" because he "had warrants." Still, defendant took a card from the victim's wallet, "saying, 'Now I have your name, and if you do anything stupid, I am going to kill you and your family.' " Later, en route to a bank, the victim spotted a police car and, despite Love's threat (" 'You are fucking dead' "), the victim did a U-turn and flagged down the officer, after which both Love and defendant were arrested. (*Love*, *supra*, E055359.)

threatening to kill him while holding a buck knife to his throat, including when defendant intervened on his siblings' behalf.

Defendant had been alcohol- and drug-free during his time in prison, which he estimated to be about 13 and one-half years. He maintained his sobriety with relevant programs, for which he had many certificates, and "stay[ed] straight" for his family, including 15 grandchildren, with whom he maintained close contact. Having "been through everything since I was a kid," as well as based on all he had seen while incarcerated ("It's been real ugly"), it was his mission to continue to help "youngsters in prison" reform ("It's not no life to live"). He sought to "get out and be the man, and get a job, and live the life I got left, which I don't know how long it is."[

The prosecutor added that defendant's commendable rehabilitation included increasing his reading and math skills from a third or fourth grade level when he entered prison up to the 11th grade level. He estimated that with custody credits, defendant's time served was closer to 16 years than 15 years. While acknowledging defendant "improved himself while in custody," the prosecutor noted the crime involved "another person . . . who is not here today," whom defendant did not mention and who "was hurt in a very dangerous situation as a result of [defendant's] actions."

The trial court found defendant's reform efforts in prison "impressive," praising "the work you did [to] turn your life around and to become a better person." The court observed that absent those efforts, the hearing would be "easy" in the sense that "I would say, 'No. Leave the sentence as it was. You are the same guy you were,' and that would be that." In particular, defendant's rehabilitation efforts were crucial "[b]ecause looking

6

back at your record, the five years leading up to this crime were not good ones for you. There's a fair bit of . . . criminal activity and it escalates. Starts involving guns. Then there is your strike. There is [a] parole violation on the strike. You go back. It's pretty quick after that that you commit this crime here," also "a strike" that "[p]ut the victim at significant risk to his safety and, in fact, [he] was injured." The court commented "I can't ignore that, and I shouldn't ignore that," but also stressed to defendant that with all you "have done [t]o turn yourself around," "the sentence that I'm going to impose should reflect that."

The court struck defendant's strike as to the assault, but not the kidnapping for robbery count. The court explained: "I'm not going to strike the strike as to that. That's going to remain a 14-year sentence. Your strike was pretty close in time to this offense. You were either . . . barely off parole or still on parole at the time of this crime. So there is not a gap in time that would put you outside the spirit of the [T]hree [S]trikes law in that way, which is why I'm doubling that to 14 years." Similarly, the court recognized it had discretion to strike the GBI enhancement on the assault count, but declined to do so because of the GBI "trauma to the victim."

The court reduced defendant's sentence another five years, stating as to his section 667, subdivision (a), term, "It's no longer mandatory," "I am going to stay [it]." And as to the prison prior: "We're going to vacate the prison term enhancement, since that's not even something that should be stayed. That just doesn't exist anymore."

The court summarized that in "reducing your sentence by . . . seven years," the "modifi[cation] here reflects the gravity of what you've done," while "balanc[ing] that

7

against the work you've done since going to prison." The court acknowledged, "In that significant amount of time, . . . there's no violence. You have done significant work. You have a lot of support from a lot of people that matter a lot." In conclusion, the court emphasized that the "seven-year reduction in your sentence from when it was imposed" was "driven largely—really almost entirely by the work that you've done to better yourself in prison." The court indicated it expected those efforts would continue, resulting in parole if so ("You will be on parole").

## DISCUSSION

Defendant challenges the trial court's decision not to strike his prior felony strike conviction for all purposes. He contends that just as the court struck the strike in relation to resentencing him on his assault conviction, it should have also done so on the kidnapping for robbery count. The court did not abuse its discretion.

The "Three Strikes" law was "designed to increase the prison terms of repeat felons" (*Romero*, *supra*, 13 Cal.4th at p. 504) within the spirit of " ' "the fair prosecution of crimes properly alleged." ' " (*Id*. at p. 531.) In *Romero*, the Supreme Court concluded section 1385, subdivision (a), permits a trial court to exercise its discretion to strike a prior felony conviction in the interests of justice. That discretion does not include dismissing prior convictions solely to accommodate judicial convenience, to relieve court congestion or antipathy to lengthy Three Strikes sentences. (*Romero*, at pp. 530-531.) It does, however, include striking a strike on a count-by-count basis. (*People v. Garcia* (1999) 20 Cal.4th 490, 503.)

The standard for ruling on a *Romero* motion, and for our review, is "whether, in light of the nature and circumstances of [a defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

Our review is under the deferential abuse of discretion standard. (*Williams*, *supra*, 17 Cal.4th at p. 161.) The question is whether the trial court's decision " 'falls outside the bounds of reason' " (*id*. at p. 162), such that "no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) The party challenging a discretionary sentencing decision bears the burden of showing it "was irrational or arbitrary." (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

Defendant first raises a procedural challenge. He contends the trial court erred by "fail[ing] to *expressly rule* on the motion to strike the prior strike conviction" and further "failed to *expressly consider* [his] substantial post-offense rehabilitation." (Italics added.) Neither the law nor the record supports these contentions. As to the law, "although a trial court is required to state on the record its reasons for striking a prior conviction [citation], there is no similar statutory requirement of an on-the-record statement of reasons when a court declines to strike a prior." (*In re Coley* (2012) 55 Cal.4th 524, 560.) In any event, moreover, the court expressly ruled on defendant's *Romero* motion, stating directly that it struck the strike as to the assault count, but "not" for kidnapping for robbery. Similarly,

9

as documented in our discussion *supra,* the record reflects the court expressly considered defendant's rehabilitative efforts.

Nor is there any merit in defendant's substantive claims that the trial court irrationally "minimized" his rehabilitative efforts or acted arbitrarily in dismissing his prior strike for resentencing as to one current conviction, but not both. The court gave ample consideration to defendant's rehabilitation, praising it as "impressive" and the driving force behind the court's decision to reduce defendant's sentence by seven years. The record reflects the court understood that its discretion included consideration of more than a lone factor such as defendant's post-conviction reform efforts. While that was an important factor, as the court recognized (see, e.g., *People v. Lozano* (2016) 243 Cal.App.4th 1126, 1138), it was not the only one. (*Williams*, *supra*, 17 Cal.4th at p. 161.)

The trial court also properly considered the nature and circumstances of defendant's prior conviction and those for which he was being sentenced. (*Williams*, *supra*, 17 Cal.4th at p. 161.) These were "part of the discussion," as the court observed, including that defendant injured the victim and put him at risk of significant additional harm. The court also expressly explained that defendant was not "outside the spirit of the [T]hree [S]trikes law" as to the kidnapping for robbery offense given it was so "close in time" to his prior conviction for attempted robbery (two years).

Furthermore, at bottom, "[i]t is not enough to show that reasonable people might disagree about whether to strike one or more of [defendant's] prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an

10

impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) That is the case here: the trial court did not abuse its discretion in granting defendant partial relief on his *Romero* motion.

In contrast, as the People concede, and we agree, the trial court did not have the sentencing option it chose under section 1385 when it elected to stay the 5-year, section 667, subdivision (a), term that it previously imposed. "Unless a statute says otherwise, an enhancement may be imposed or stricken, but . . . may not be stayed; to do so is an illegal sentence." (*People v. Harvey* (1991) 233 Cal.App.3d 1206, 1231.) As pertinent here, section 1385 only permitted the trial court to "strike or dismiss an enhancement" or "the additional punishment for that enhancement in the furtherance of justice." (§ 1385, subd. (b)(1); see *People v. Lopez* (2004) 119 Cal.App.4th 355, 364 ["The trial court has no authority to stay an enhancement, rather than strike it—not, at least, when the only basis for doing either is its own discretionary sense of justice"].) "Rather, the only authority for staying an enhancement is California Rules of Court, rule 4.447, which applies when 'an enhancement that otherwise would have to be either imposed or stricken is barred by an overriding statutory prohibition. In that situation— and that situation only—the trial court can and should stay the enhancement.' " (*People v. Bay* (2019) 40 Cal.App.5th 126, 139; see generally Couzens et al., Sentencing California Crimes (The Rutter Group 2024) § 12:12 [same].)

Defendant acknowledges that based on the court's stated intention to reduce his prison term when it purported to stay the five-year prior, the court in effect "intended to

strike or remove this five year term from his sentence." Defendant argues remand is necessary for the trial court to strike the prior and that, upon remand, he is entitled to a full resentencing hearing. We conclude, however, that a new resentencing hearing would be an empty gesture here where the parties agree the trial court's intention was to reduce defendant's sentence by five years.

Consequently, we exercise our authority to correct the trial court's unauthorized stay and do so by modifying the judgment to strike the punishment on defendant's section 667, subdivision (a) prior. (§ 1260 [reviewing court "may reverse, affirm, or modify a judgment or order appealed from"]; *People v. Vieira* (2005) 35 Cal.4th 264, 294 [appellate court may exercise its authority to modify an unauthorized sentence under § 1260 and direct the trial court to issue an amended abstract of judgment reflecting the appropriate sentence]; see, e.g., *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473 [same].) "The futility and expense of" remanding simply for the trial court to do the same at a new resentencing hearing "militates against it" because the record reflects that the trial court would have struck the prior had it known no stay was possible. (*Alford*, at p. 1473.)

The parties agree that on remand the abstract of judgment should be corrected to reflect the oral pronouncement of judgment (see *People v. Mitchell* (2001) 26 Cal.4th 181, 185), in which the trial court vacated rather than stayed the one-year term for defendant's prison prior.

12

**DISPOSITION**

The judgment is modified (§ 1260) to strike punishment on the trial court's section 667, subdivision (a), prior serious felony finding. The trial court is directed to correct the abstract of judgment accordingly, to further correct the abstract of judgment to reflect that the trial court vacated defendant's prior prison term (§ 667.5, subd. (b)), and to forward an amended copy of the abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                                                                                    J.


We concur:

RAMIREZ
                    P. J.


FIELDS
                    J.

13